## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

| In re:, | BKY Case No.: 17-31145 |
|---|---|
| Pawn America Minnesota, LLC, | |
| Debtor. | Chapter 11 Case |

---

| In re:, | BKY Case No.: 17-31146 |
|---|---|
| Pawn America Wisconsin, LLC, | |
| Debtor. | Chapter 11 Case |

---

| In re:, | BKY Case No.: 17-31147 |
|---|---|
| Exchange Street, Inc., | |
| Debtor. | Chapter 11Case |

---

## APPLICATION BY DEBTOR TO EMPLOY BUSINESS AND FINANCIAL CONSULTANT (ALLIANCE MANAGEMENT)

---

TO:    United States Bankruptcy Judge, the United States Trustee, and other parties in interest identified in Local Rule 2014-1.

1.    Pawn America Minnesota, LLC, Pawn America Wisconsin, LLC, and Exchange Street, Inc. (the "Debtors" or "Pawn America") filed a petition for reorganization under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and requires representation of business and financial restructuring consultants in the course of this case.

2.    Pawn America wishes to employ the financial and turnaround consulting firm of BGA Management, LLC d/b/a Alliance Management ("Alliance") to continue to assist Pawn America as a financial and turnaround consultant during the case, to perform other consulting services necessary to the Debtors' continuing operations, and to assist in the preparation of a plan of reorganization.

3.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334, Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 1070-1.  This is a core proceeding.  The petition commencing this case was filed on April 12, 2017 (the "Petition Date").  The case is now pending in this Court.

4.      This Application arises under 11 U.S.C. §§ 327(a), 328, and Bankruptcy Rule 2014.  This Application is filed under Local Rules 2014-1 and 9013-4.  The Debtors seek an order authorizing employment of Alliance.

5.      Information concerning the Debtors' history and business operations and the events leading up to the commencement of these Chapter 11 cases can be found in the Declaration of Bradley K. Richtman filed in connection with various "first day" motions. In further support of this Application, the Debtors respectfully represent as follows:

## BACKGROUND

Alliance began consulting with Pawn America in October 2016.  Since that time, Pawn has paid Alliance a total of approximately $231,627.65, excluding the pre-bankruptcy retainer discussed below.  Based on the Debtors' prepetition experience, they believe that Alliance's consultants are competent and experienced in assisting corporations in Chapter 11 and that Alliance's employment is in the best interest of the bankruptcy estates.

6.      Pawn America has paid Alliance a retainer of $174,716.25 prior to the Petition Date, and has agreed that Alliance will hold the retainer in trust for application against its final allowed fees.  Pawn America proposes that employment be on an hourly rate plus costs, as set out in the Professional Services Agreement attached hereto as **Exhibit A**, subject to approval of the Court.  The following description of the Professional Services Agreement is intended to be a

2

summary and, in the event of any inconsistency, the terms of the Professional Services Agreement will control.

## SCOPE OF SERVICES

7.      Under the terms of the Professional Services Agreement, Alliance will submit its bills monthly to Pawn America and will be paid in accordance with local bankruptcy practice or as otherwise ordered by this Court.  Alliance will be reimbursed its fees and paid for work performed on the basis described in the Professional Services Agreement.   Alliance's professionals will charge hourly rates ranging from $345 to $550, subject to normal and customary increases, which occur in January of each calendar year.

8.      The Professional Services Agreement provides that the Debtors shall reimburse Alliance's reasonable business and travel expenses, including reasonable attorneys' fees incurred in the preparation for, or work in the bankruptcy case, including without limitation, preparing fee applications, providing litigation support, and assisting with similar legal issues.

9.      In addition, the Debtors have agreed to indemnify Alliance if, in connection with any work, service, or matters subject to the Professional Services Agreement, Alliance or its officers, directors, employees, or agents become involved in any capacity in any action or legal proceeding, pending or threatened.  The Debtors agree to (a) reimburse reasonable legal fees, disbursement, and other expenses, and (b) defend, indemnify, and hold harmless Alliance against any and all losses, claims, damages, and liabilities.  Pawn's agreement to the indemnity is reasonable because the indemnity is a precondition to Alliance's willingness to enter into the Professional Services Agreement.  The indemnity does not cover instances in which Alliance is found by the Court to have committed gross negligence or willful misconduct.

10.     Pawn America has reviewed the Unsworn Declaration of Michael Knight and believes the employment of Alliance is in the best interest of the estate and that Alliance does not represent or hold any interest adverse to the estate and is "disinterested" within the meaning of section 327(a) of the Bankruptcy Code.  In the event the United States Trustee, the Court, or any other party asserts, or is concerned that, Alliance is not qualified to represent the Debtors, they request that a hearing be scheduled.

11.     Pawn America believes the granting of this Application is in their best interests and is in the best interests of all creditors and other parties in interest in these Chapter 11 proceedings.  The Debtors' decision to enter into the Professional Services Agreement is an appropriate exercise of the Debtors' business judgment and will greatly benefit the bankruptcy estates.   In this case, Pawn America requires the stability and expertise that financial restructuring and turnaround management professionals can provide.  The requested relief is the best and most cost-efficient option available to maximize the value of the assets of this estate. The Debtors approval of Alliance's employment for the purpose of preserving the value of their assets consistent with the obligations imposed pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

12.     No previous application has been made for employment of a financial consultant. Pawn is contemporaneously making an application for employment of chapter 11 counsel.

13.     This Application has been served on the parties set out in Local Rule 2014-1(a).

WHEREFORE, the Debtors request an order approving the employment of Alliance as financial restructuring consultant.

4

**Pawn America Minnesota, LLC**
a Minnesota limited liability company

By: _____

Name: _____Brad Rixmann_____

Its: _____President_____


**Pawn America Wisconsin, LLC**
a Minnesota limited liability company

By: _____

Name: _____Brad Rixmann_____

Its: _____President_____


**Exchange Street, Inc.**
a Minnesota corporation

By: _____

Name: _____Brad Rixmann_____

Its: _____President_____

**EXHIBIT A**



601 Carlson Parkway
Carlson Towers, Suite 110
Minneapolis, MN  55305
952-475-2225 [Main]
952-475-2224 [Fax]
www.alliancemgmt.com

## Professional Services Agreement

**Client: Pawn America, Inc.**                **Client File:   216.20-PA:01(TA)**

This Agreement, dated and entered into this _10th_ day of April, 2017, by and between **Pawn America, Inc.** (hereinafter **"Client"**), _181 River Ridge cr S_ , Burnsville, MN 55_337_ and BGA Management, LLC d/b/a **Alliance Management** (hereinafter "**Consultant**"), Carlson Towers, Suite 110, 601 Carlson Parkway, Minnetonka, MN  55305, sets forth the terms and conditions of the business relationship of the parties hereto.

# 1.    Consulting Assignment
**1.1       Retention of Consultant. Client** is retaining Consultant for the purpose of assisting Client with financial planning, the possible restructuring of Client's general finances, assistance with the preparation of a Plan of Reorganization, the attempted turnaround of Client's business operations and/or the implementation of other strategic options.
**1.2       Access to Information and Cooperation.** Client shall provide Consultant full and complete access to all available information concerning Client's finances and business operations.  Client agrees that it will collaborate with Consultant to determine an appropriate business strategy and business plan for Client's business.  To the extent Consultant is assisting with the execution of any part of that strategy, Client will cooperate fully with Consultant on Consultant's work.  For the duration of this Agreement, Client agrees to seek Consultant's advice before it determines the financial and operational strategies undertaken by the Client's business, and Client agrees that it will advise Consultant before it undertakes to negotiate new terms with any of Client's creditors.
**1.3       General Scope of Work.**   Consultant will advise Client regarding the proposed reorganization of Client's business, including but not limited to the following:
  a.     Assess and monitor Client's financial and operational condition.
  b.     Advise Client regarding the financial and operational management of Client's business.
  c.     Work with Client's staff to prepare a short or long term business and financial plans which will guide and inform Client's efforts to restore its business.
  d.     Assist in communication and negotiation with Client's creditors, landlords and others having a business relationship with Client's business.
  e.     If requested by Client, prepare a financing memorandum and undertake efforts to help secure new sources of capital.
  f.      Generally attempt to assist Client in its efforts to successfully implement its strategic plan, including but not limited to the possible reorganization, turnaround, sale and/or refinancing of Client's business.

# 2.    Compensation
**2.1       Professional Fees.** Consultant's work, as set forth in Section 1., above, shall be billed by Consultant and paid for by Client at the rate of $350 per hour for Stephanie Bramer, $375 per hour for Brock Kline and Jeff Gorman, $400 per hour for David Burke and Alex Smith, $450 per hour for Chris Tomas, and $550 per hour for Michael Knight.  Other professionals may perform work for Client with Client's prior consent; such persons shall be billed at their then current hourly rates. Client agrees that the hourly rates quoted in this Section 2.1 are subject to normal and customary

increases which occur in January of each calendar year, provided that written notice of any hourly fee increases is delivered to Client prior to such increases taking effect.

**2.2    Intentionally Redacted.**

**2.3    Expenses.**  In addition to Consultant's fees, Client shall reimburse Consultant for Consultant's reasonable business and travel expenses associated with Consultant's work hereunder, including reasonable attorneys fees incurred by Consultant in the course of Consultant's work hereunder.  Parking, long distance telephone, cell phone, photocopies, and other reasonable expenses shall be reimbursed at Consultant's cost.

**2.4.    Litigation Support.**  Should Consultant be required to provide testimony, discovery documents, depositions or other activities related to its work hereunder, Client agrees to fully reimburse Consultant for all its documented expenses for providing such litigation support including, but not limited to, out-of-pocket expenses, legal fees, preparation time, and time providing testimony, depositions, affidavits, sworn statements and/or interviews.  Consultant's professional time for such work shall be billed hourly at the respective rates listed above.

**2.5    Collection.**  If Consultant initiates any suit or collection action for non-payment, Consultant shall be entitled to recover its reasonable legal costs, expenses and attorneys fees.

**2.6    Court Approval Required.**  Consultant acknowledges that its fees and costs are subject to Bankruptcy Court approval and that payment shall be in accordance with local practice.

**2.7    Survival.**  Client's obligation to pay Consultant's fees and other compensation set forth in this Section 2, as well as any other provision of this Agreement that is reasonably intended to survive termination, shall be deemed to survive the termination of this Agreement.

## 3.    Other Business Terms

**3.1    Termination.**  Either party may terminate this Agreement upon ten (10) days written notice. Upon termination, Client shall be obligated to pay to Consultant any portion of Consultant's fees that have been earned in part or in full but remain unpaid at the time of such termination, including any Success Fees that may become due subsequent to termination.

**3.2    Indemnity and Limitation of Liability.**  If, in connection with any work, services or matters that are the subject of this Agreement, Consultant (for purposes of this section, "Consultant" shall include both Consultant and its officers, directors, employees and agents) becomes involved in any capacity in any action or legal proceeding, pending or threatened, Client agrees (a) to reimburse Consultant for the reasonable legal fees, disbursements, and other expenses including the cost of investigation and preparation incurred by Consultant as such fees, disbursements and expenses are incurred, and (b) Client agrees that it shall defend (with counsel selected by Consultant), indemnify and hold Consultant harmless, against any and all losses, claims, damages, liabilities, joint or several, to which Consultant may become subject arising out of any such claim, action or legal proceeding, including, but not limited to, employee or government claims (and any fines or penalties relating thereto) for failure to pay any employee withholding obligation or benefits; claims of any creditor, shareholder, customer, employee, supplier or other party relating in any way to the decline, damage to or failure of Client's business; or, Client's failure to pay any obligation when due. This indemnity shall not apply where the Court has made a finding that Consultant has been grossly negligent or has committed willful misconduct.  Consultant acknowledges that this clause is subject to the approval of the Bankruptcy Court.

**3.3    Miscellaneous**

**3.3.1**    Consultant shall receive general direction from Brad Rixmann.

**3.3.2**    This Agreement shall be governed by the laws of the State of Minnesota, and any disputes relating to this Agreement shall be venued in the County of Hennepin, State of Minnesota.  Nothing contained in this Agreement shall bar the right of either party to obtain injunctive or preliminary injunctive relief under the usual rules of equity against acts or threatened conduct that will cause damage or irreparable harm to the moving party.

**3.3.3**    Prior to commencing work for Client, Consultant had developed certain proprietary financial models that it uses to discharge its work, and Consultant's staff may take notes in meetings with

Client or in analyzing Client's business.  Consultant's financial models and notes ("Work Papers") are the property of Consultant.  Consultant agrees that to the extent such Work Papers contain information regarding Client's business, such Work Papers shall remain confidential. During the course of Consultant's work for Client, Consultant may produce materials for Client, including budgets, forecasts and related analysis ("Work Product").  Work Product produced for Client shall be the property of Client.  Consultant may keep copies of the Work Product after the termination of the engagement for its confidential files and records.   Any materials furnished by Client to Consultant shall be returned to Client upon request.

**3.3.4**   Consultant does not provide legal advice or legal services of any kind and Client agrees to rely upon advice from its own legal counsel as to all legal matters.

**3.3.5**   Client acknowledges that it is entering into this Agreement without any promises or representations by Consultant or any third party as to the actual results that will be achieved by Consultant or through this engagement.

**3.3.6**   There shall be no changes or modifications to this Agreement, and none shall be implied or binding, unless both parties agree to such changes or modifications in writing.

**3.3.7**   Facsimile copies of this Agreement, signed in counterpart, shall be considered for all purposes, including delivery, the same as originals.

**3.3.8**   The provisions of this Agreement shall, where it is reasonably anticipated to fulfill their essential or intended purpose, survive the expiration period of this Agreement, including any extensions hereof.

**3.3.9**   This Agreement embodies the whole and entire agreement between Client and Consultant. There are no promises; terms, conditions or obligations other than those contained herein.  This Agreement shall supersede all previous agreements, communications and representations made by or between the parties with or to one another.


**CONSULTANT**
*Alliance Management*


By: _____
*Its:  President*


**CLIENT**
*Pawn America, Inc.*


By: _____
Its: _____*President*_____


Pawn PSA – BK version [v1] – 4 12 17.doc

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:,<br>Pawn America Minnesota, LLC,<br>Debtor. | BKY Case No.: 17-31145<br><br>Chapter 11 Case |

| | |
|---|---|
| In re:,<br>Pawn America Wisconsin, LLC,<br>Debtor. | BKY Case No.:  17-31146<br><br>Chapter 11 Case |

| | |
|---|---|
| In re:,<br>Exchange Street, Inc.,<br>Debtor. | BKY Case No.:  17-31147<br><br>Chapter 11Case |

## UNSWORN DECLARATION OF MICHAEL KNIGHT
## AND STATEMENT OF COMPENSATION

Michael Knight makes the following declaration in support of the Application of Pawn America Minnesota, LLC, Pawn America Wisconsin, LLC, and Exchange Street, Inc. (the "Debtors" or "Pawn America") to employ BGA Management, LLC d/b/a Alliance Management ("Alliance") as business and financial restructuring consultant (the "Application") and in compliance with Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 1007-1.

1.      I am the founder and President of Alliance.  I make this Unsworn Declaration in support of the Debtors' Application to employ Alliance in this case.

2.      Alliance is a financial restructuring and turnaround management firm that provides corporate renewal, management advisory, and investment banking services to small and middle-market companies.  The principals of Alliance are active members in the Turnaround Management Association, the American Bankruptcy Institute, the Minnesota State Bar

Association Bankruptcy Section, and the Hennepin County Bar Association, and the American College of Bankruptcy, among other organizations. Alliance has successfully completed hundreds of engagements in a wide variety of industries.

3.     Alliance has worked with Pawn America on financial restructuring matters since October 2016. Accordingly, Alliance is very familiar with all aspects of the Debtors' operations and finances.

4.     Going forward, Alliance proposes to continue to provide financial restructuring services throughout the pendency of these bankruptcy cases.

5.     Alliance has never been an elected officer or director of the Debtors, and no member of Alliance is an insider of the Debtors.

6.     Alliance has run a conflicts search with respect to Pawn America and its creditors. Alliance requires its professionals, before accepting the representation of a new client or the representation of an existing client in a new matter, to perform a conflict check. In this case, inquiry was made of the professionals working for Alliance regarding any connections or conflicts with Pawn America, secured creditors, and the twenty largest unsecured creditors of the Debtors. In addition, a search has been performed of Alliance's records of prior and current engagements for any potential conflicts.

7.     Based on the above-referenced conflicts check and to the best of my knowledge, Alliance does not hold or represent any interest adverse to the Debtors' bankruptcy estates, any party in interest, their respective attorneys or accountants, the United States Trustee, or any person employed in the Office of the United States Trustee, except as set out below. In addition, Alliance does not employ any person that is related to a judge of this Court or the United States Trustee for this region, within the meaning of Bankruptcy Rule 2014, except as stated below.

2

a.      Because of the nature of Alliance's work, it is not unusual for Alliance to be adverse to any number of creditors at any time, some of which are involved in this case.

b.      Alliance has represented, and will represent in the future, many different clients with various business interests in numerous industries.  These clients are often referred to Alliance by intermediaries, such as lawyers, investment bankers, lenders, and accountants.

c.      Alliance has in the past represented some of the creditors of Pawn America in connection with matters unrelated to Pawn America and these Chapter 11 cases.  In each instance, except as described in this paragraph, Alliance's representation has concluded so that the former representation of that creditor does not represent a current conflict.

d.      Stinson Leonard Street LLP ("Stinson") is proposed chapter 11 counsel to Pawn America.  Alliance has frequently worked with, and against, Stinson in connection with Chapter 11 cases and workouts.  From time to time in the past, Stinson has provided legal services to Alliance on matters not related to these cases.

None of the above relationships constitute actual conflicts, but may be "connections" within the meaning of Bankruptcy Rule 2014 and are therefore disclosed.  The Debtors have been advised of the above "connections" and has waived any conflicts.

8.      There may be other persons within the scope of Bankruptcy Rule 2014 that, unknown to me, Alliance has represented in particular matters in the past.  We agree not to represent such persons who are creditors or other parties in interest in this case while representing Pawn America, without further disclosure.  Alliance agrees to update the disclosure

3

information from time to time if and when additional parties with an interest in, or a relationship
with, Pawn America are identified by Pawn America in writing to Alliance.

9.      Except as the Court may determine from the circumstances disclosed above,
Alliance does not hold or represent any interest adverse to the estates, and Alliance is a
"disinterested person" within the meaning of 11 U.S.C. § 327(a).

10.     Alliance has worked with Pawn since approximately October 2016 as a financial
advisor.  The Debtors have provided Alliance retainers for these consulting services.  In the 90
days prior to the Filing Date, Alliance applied the retainer to invoices for $83,587.50.  Prior to
the Petition Date, Alliance received additional retainers of $175,000.00, which the Debtors and
Alliance have agreed, together with the remaining retainer balance, will serve as a Chapter 11
retainer in the amount of $174,716.25.  To the extent Alliance has not been paid for the days
immediately following the filing of this bankruptcy case, Alliance will describe the unpaid
amounts in its first fee application and seek allowance and payment of the unpaid amounts.

11.     The compensation agreed to be paid by the Debtors to Alliance for its services in
these bankruptcy cases is set out in the Professional Services Agreement attached as Exhibit A to
the Application, all as may be allowed by the Court following period fee applications.

12.     Alliance will not receive the transfer of property in lieu of payments from the
Debtors.

13.     Alliance has not shared or agreed to share any compensation paid, or to be paid,
with any other person, other than with members or associates of Alliance.

14.     Alliance is aware of the conflict and disgorgement rules regarding representation
of debtors in Chapter 11 cases and has the financial ability to return fees if the Court so orders at
any point in the case.

4

15.    I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Dated: 4/12/17

_____
Michael Knight, President
BGA Management, LLC d/b/a Alliance
Management

59747849